**UNITED STATES of America ex rel. Lillian REIS, Petitioner-Appellant, Cross-Appellee,**

v.

**Louie L. WAINWRIGHT, Director, Division of Corrections, Respondent-Appellee, Cross-Appellant.**

No. 74–3422.

United States Court of Appeals, Fifth Circuit.

Jan. 16, 1976.
Rehearing Denied Feb. 23, 1976.

Joel Hirschhorn, Yale T. Freeman, Miami, Fla., for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Linda C. Hertz, Asst. Atty. Gen., Miami, Fla., for respondent-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

In two separate state proceedings appellant Reis was convicted of unlawful possession of marijuana[1] and of obtaining prescription drugs by giving a false name and address.[2] In her § 2254 habeas corpus petition filed below she challenged the constitutionality of both convictions, raising two grounds for relief. Her first contention was that she had been denied her right to reasonably effective assistance of counsel.[3] Concluding that Reis had failed to show a deprivation of constitutional dimension, the district court denied relief on this allegation. Reis has appealed from this denial. Applying the standard for evaluating retained counsel set forth in *Fitzgerald v. Estelle,* 505 F.2d 1334 (5th Cir. 1974) (*en banc*), we affirm the lower court's denial of relief on this issue.

As a second basis for relief, Reis asserted that evidence admitted in the prosecution of the marijuana charge had been obtained in an unlawful search and seizure. On this issue the district court ruled in her favor and granted the writ with respect to the conviction for possession of marijuana. The government has elected to appeal from this partial grant of relief. We reverse, finding the search lawful under the Fourth Amendment as construed and applied by the Supreme Court at the time of the challenged search.

On March 26, 1965 Miami Beach police officers arrested Reis in the living room

1. In violation of Chapter 398.03 Florida Statutes (1971).

2. Chapter 398.19(1) Florida Statutes (repealed 1973):

 Fraud in obtaining narcotic drugs—(1) No person shall obtain or attempt to obtain a narcotic drug, or obtain or attempt to obtain a prescription for a narcotic drug, or procure or attempt to procure the administration of a narcotic drug:

 \* \* \* \* \* \*

 (d) By the use of a false name or the giving of a false address.

3. Petitioner clearly alleges a denial of effective assistance of counsel in both prosecutions. At the evidentiary hearing in the district court, evidence was adduced concerning the adequacy of defense counsel in both cases. It is unclear whether Reis has properly preserved for appellate review the issue of inadequate counsel in her trial for possession of marijuana. In her brief on this appeal she denominates the issue as "Whether petitioner failed to have effective assistance of privately retained counsel at her *trial* in state court." Nevertheless, to support her allegation of ineffectiveness, appellant cites some errors which relate only to the prosecution for possession of marijuana. Though perhaps not required to do so, we shall consider the merits of the incompetence issue with respect to both cases.

of her apartment. They had reasonable grounds to believe that she was the person who had obtained prescription drugs under an alias.[4] A search of her entire apartment disclosed a marijuana cigarette in a purse in the bedroom.[5]

Thereafter she was charged by information with one count of unlawful possession of marijuana and six counts[6] of unlawfully obtaining prescription drugs by giving a false name and address. She elected to waive trial by jury on the charge of unlawful possession of marijuana. The case was tried by the court; a judgment of conviction was entered; and she was sentenced to a two year term of imprisonment. A jury subsequently convicted her of all six counts of obtaining prescription drugs by giving a false name and address. On each count she received a two year prison sentence. All sentences were to be served concurrently. She was represented in both cases by the same attorney, whom she had retained.

A lengthy delay between trial and appeal ensued due to the refusal of the Florida courts to declare Reis insolvent and authorize an appeal in *forma pauperis* with a free transcript.[7] Ultimately she was granted a belated direct appeal; and the two cases were consolidated; the same attorney who had represented her at trial prosecuted her appeal. The District Court of Appeal for the Third District of Florida affirmed the judgments of conviction on all counts, rejecting her contentions of insufficient evidence and unlawful search. *Reis v. State,* 248 So.2d 666 (Fla.App.1971). The Florida Supreme Court denied certiorari. *Reis v. State,* 252 So.2d 798 (1971).

Reis then left the state of Florida and refused to return for approximately two years. Immediately after she relented and surrendered herself to Florida authorities, she filed in state court, through new counsel, a Motion to Vacate and Set Aside Judgment and Sentence pursuant to Fla.R.Crim.P. 3.850. She alleged two

4. A doctor had identified a photograph of Reis as that of a woman for whom he had written a prescription. She had told the doctor that her name was Loraine Renaldo and that she lived at the Sea Gull Hotel. An employee of the drugstore where the prescription was filled also identified her photograph.

 She does not here allege that her arrest was unlawful. The Florida Court of Appeals rejected that contention. *Reis v. State,* 248 So.2d 666 (1971).

5. It is unclear whether the purse was found on a bedside table or in a closet. Our decision would not be different in either case.

6. Three counts of obtaining prescription drugs by giving a false name and three counts of obtaining prescription drugs by giving a false address.

7. After judgments of conviction were entered in both cases, Reis petitioned the state court to declare her insolvent or to provide her with a free transcript. The state court denied this request. *State ex rel. Reis v. Leppig,* 189 So.2d 637 (Fla.1966). Her petition for habeas corpus having been denied by the Supreme Court of Florida, she sought habeas relief in the federal courts. The district judge held that the state trial judge had arbitrarily and completely ignored all the evidence of insolvency and thereby denied Reis her right of appeal. The district court ordered that Reis be perma-

nently discharged from custody unless within fifteen days she had received a forma pauperis trial transcript and had been granted leave to appeal in state court. *United States ex rel. Reis v. Leppig,* 256 F.Supp. 881 (S.D.Fla.1966), *affirmed sub nom. Buchanan v. United States ex rel. Reis,* 379 F.2d 612 (5th Cir. 1967). Notice of appeal on behalf of Reis was thereafter filed in state court on July 25, 1967.

The Florida appellate court ruled that it lacked jurisdiction to entertain an appeal filed more than 90 days after the judgment and sentence; the court also refused to reinstate Reis's appeal. She returned to federal court where she filed a motion for entry of an order permanently discharging her from custody; the district court granted the requested relief. The state of Florida appealed, and this court held that the order of the district court was too broad and reversed the judgment below to the extent that it precluded the state of Florida from conducting further proceedings against Reis. The judgment was remanded with directions that Reis be given a reasonable time to file a motion to vacate sentence and judgment in the trial court. If that motion did not succeed in obtaining full appellate review for Reis, she was to be discharged from custody. *Purdy v. United States ex rel. Reis,* 416 F.2d 1052 (5th Cir. 1969). Thereafter Reis was granted a belated direct appeal by the state appellate court on August 14, 1970.

grounds for post-conviction relief. First, she again contended that the marijuana cigarette had been obtained in an illegal, rummaging search. Second, she claimed that her trial counsel had provided ineffective assistance. The state judge summarily denied relief on the issue of the search. After hearing oral argument on the issue of ineffective counsel, he also denied relief with respect to that claim, stating that Florida jurisprudence does not recognize ineffectiveness of privately retained counsel as a basis for post-conviction relief.

No further appeal was prosecuted in the Florida courts. Instead, pursuant to 28 U.S.C. § 2254, Reis filed a petition for writ of habeas corpus in federal court.

## I. *Exhaustion of State Remedies*

█ As she did not appeal from the denial of her Motion to Vacate and Set Aside Judgment and Sentence, Reis has never given the Florida appellate courts an opportunity to consider her claim of incompetent counsel.[8] The state contends, therefore, that we should dismiss the petition until the Florida courts have had occasion to consider that issue.

█ The doctrine of exhaustion of state remedies is bottomed on federalism and the resultant policy necessary to the smooth functioning of our dual court system, state and federal;[9] it is a matter of comity—not jurisdiction—and we are not powerless to act in the absence of exhaustion.

█ Petitioners seeking federal habeas corpus need not exhaust state remedies where it is plain that resort to the state courts would be futile. *St. Jules v. Savage,* 512 F.2d 881 (5th Cir. 1975); *Layton v. Carson,* 479 F.2d 1275 (5th Cir. 1973); *Davis v. Smith,* 430 F.2d 1256 (5th Cir. 1970); *Bruce v. Beto,* 396 F.2d 212 (5th Cir. 1968); *McDonald v. Moore,* 353 F.2d 106 (5th Cir. 1965); *Reed v. Beto,* 343 F.2d 723 (5th Cir. 1965), *aff'd on other grounds sub nom., Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). In an uninterrupted line of cases Florida has steadfastly refused to recognize incompetence of privately retained counsel as a valid basis for post-conviction relief.[10] The rule appears firmly entrenched in Florida's jurisprudence, and we see no indication that a Florida appellate court would be inclined to deviate from this well worn path.

We do not face the situation where dismissal would be proper in order to permit the state appellate court to reconsider its rule in light of a recent contrary pronouncement of this court. *See Glenn v. Askew,* 513 F.2d 61 (5th Cir. 1975). The rule has been maintained in Florida, even in the face of holdings of this circuit[11] that a defendant who is denied due process because of the incompetency of privately retained counsel is

---

8. Reis's claim of an illegal search and seizure was before the Florida appellate courts in her direct appeal. That claim is therefore exhausted. Once a petitioner's contention has been presented to the highest state court, it is not necessary to present it again by different means. *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

9. *See Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1866) and *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

10. *E.g., Staples v. State,* 298 So.2d 545 (Fla. App.1974); *McNarmara v. State,* 284 So.2d 449 (Fla.App.1973); *Crawley v. State,* 256 So.2d 555 (Fla.App.1972); *Dickenson v. State,* 261 So.2d 561 (Fla.App.1972); *Humphries v. State,* 232 So.2d 23 (Fla.App.1970); *Belsky v. State,* 231 So.2d 256 (Fla.App.1970); *Brown v.*

State, 223 So.2d 337 (Fla.App.1969), *cert. denied,* 397 U.S. 969, 90 S.Ct. 1009, 25 L.Ed.2d 262 (1970); *Byrd v. State,* 220 So.2d 14 (Fla. App.1969); *Frizzell v. State,* 213 So.2d 293 (Fla.App.1968); *Cappetta v. Wainwright,* 203 So.2d 609 (Fla.1967); *Amaral v. State,* 171 So.2d 549 (Fla.1965); *Coyner v. State,* 177 So.2d 715 (Fla.1965); *Everett v. State,* 161 So.2d 714 (Fla.1964). These Florida cases fail to lend support to the optimism expressed in *Lamberti v. Wainwright,* 513 F.2d 277, 282 n. 6 (5th Cir. 1975).

11. At any rate our decisions would not bind the Florida state courts. *See Bradshaw v. State,* 286 So.2d 4 (Fla.1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 225 (1974); *Stonom v. Wainwright,* 235 So.2d 545 (Fla. App.1970).

as deserving of post-conviction relief as a defendant who has had court-appointed counsel, *e. g., Bell v. State of Alabama,* 367 F.2d 243 (5th Cir. 1966).

Even the state, in opposition to the appellant's motion for an evidentiary hearing on the issue of incompetent counsel under Fla.R.Crim.P. 3.850, argued that an evidentiary hearing was unnecessary because "Florida cases are legion in holding that in post-conviction relief cases one may not contest the competency of privately retained counsel." The state is unable to cite a single Florida case evidencing even the slightest penchant to abandon its precedent. In these circumstances, dismissal for want of exhaustion of state remedies is not justified. "Neither the statute nor the spirit of needed comity behind it require such a formalistic waste of precious judicial energy, state or federal." *Reed v. Beto, supra,* 343 F.2d at 725.

The district court did not err, therefore, in refusing to dismiss Reis's petition for failure to exhaust state remedies.

## II. *Ineffective Assistance of Counsel*

■ The standard by which we must gauge the adequacy of the representation of retained counsel was set forth in *Fitzgerald v. Estelle, supra.* In *Fitzgerald* we stated that the right to effective assistance of counsel is safeguarded both by the due process clause of the Fourteenth Amendment standing alone and by the Sixth Amendment guarantee of effective representation (applied to the states through the Fourteenth Amendment). When defense counsel's representation is so blatantly incompetent as to render the whole proceeding fundamentally unfair, the due process clause itself is violated. When, however, the aggregate of retained counsel's alleged errors does not rise (or sink) to the level of fundamental unfairness, in order to support a finding of a

Sixth Amendment violation there must be a showing that the state was somehow involved in the ineffective representation:

> To find state involvement in retained counsel's conduct which is adjudged to be less than reasonably effective, yet not so grossly deficient as to render the proceedings fundamentally unfair, it must be shown that some responsible state official connected with the criminal proceeding who could have remedied the conduct failed in his duty to accord justice to the accused. That the trial judge and the prosecutor have such a capacity and duty is unquestionable. Therefore, if the trial judge or the prosecutor can be shown to have actually known that a particular defendant is receiving incompetent representation and takes no remedial action, the state action requirement is satisfied. If they directly participate in the incompetency, it is even more so. Furthermore, if the incompetency of a retained attorney's representation is so apparent that a reasonably attentive official of the state should have been aware of and could have corrected it then again the state action requirement is satisfied.

505 F.2d at 1337 (footnote omitted).

Reis simply has not shown either that her trial was fundamentally unfair [12] or that her retained counsel's representation was so egregious that a reasonably attentive state official should have interceded to take corrective action. Her claim is thus not of constitutional dimension.

At the evidentiary hearing below Reis's trial counsel testified and explained his trial tactics. He testified that the defense on the charge of obtaining prescription drugs by giving a false name and address was lack of specific intent to defraud. His strategy was to show that Reis had a legitimate reason to see a doctor; that she had legitimately received the prescription; and that

---

12. At oral argument appellant's counsel conceded that the trial was not a farce or mockery.

her use of a fictitious name had been totally harmless.[13] He attempted to show that Reis, a show business personality, had used an assumed name to avoid publicity. He requested, and the court subsequently gave, an instruction that a finding of specific intent was necessary for conviction.

In the prosecution for possession of marijuana, his trial strategy was to show first that the search was unlawful and, when that argument failed, to show that the appellant was not in possession of the marijuana cigarette. Trial counsel was able to cite from memory a case upon which he built his defense of an unlawful search. Reis's present counsel has relied upon that very case in his challenge to the search in the present appeal.

 In addition, counsel filed and argued a motion for witness lists, a motion to quash the information, a motion to quash the arrest, a motion to recuse, a motion for directed verdict, and several motions for new trial. His representation of Reis may not have been wholly free of mistakes, but we have interpreted the constitutional right to counsel " . . . to mean not errorless counsel and not counsel judged ineffective by hindsight, but counsel reasonably likely to render, *and rendering,* reasonably effective assistance." *MacKenna v. Ellis,* 280 F.2d 592 (5th Cir. 1960), *modified,* 289 F.2d 928, *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1972). *See also Loftis v. Estelle,* 515 F.2d 872 (5th Cir. 1975); *Lee v. Hopper,* 499 F.2d 456 (5th Cir. 1974); *United States v. Fruge,* 495 F.2d 557 (5th Cir. 1974); *Pineda v. Bailey,* 340 F.2d 162 (5th Cir. 1965).

Applying the above standards, we cannot conclude that the district judge erred in his conclusion that "[c]ounsel was competent and did everything within his power to represent the petitioner efficiently and effectively."

13. Even appellant concedes that trial counsel "argued to the jury what must be considered the best if not the only, substantive defense to the charges against petitioner of using a false name and address on her prescription; to-wit:

### III. *The Search*

Reis's claim of an unlawful search relates only to her conviction under the count charging possession of marijuana. The sentences imposed under all counts were concurrent two year sentences. Having denied relief from the convictions of obtaining prescription drugs by the use of a false name and address, our consideration of Reis's second claim is perhaps unnecessary under the concurrent sentence doctrine. *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *Hirabayashi v. United States,* 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed.2d 1774 (1943); *United States v. Bowman,* 502 F.2d 1215 (5th Cir. 1974); *United States v. Radue,* 486 F.2d 220, *rehearing denied,* 487 F.2d 1401 (5th Cir. 1973), *cert. denied,* 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974).

The challenged search was conducted in 1965, before the Supreme Court's landmark decision in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which narrowed considerably the permissible scope of searches incident to arrest. The *Chimel* Court held that a search incident to arrest must be confined to the arrestee's person and to an area within his immediate control.

 *Chimel,* however, is not to be given retroactive application. *Williams v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). Accordingly, we must assess the validity of the search incident to Reis's arrest against the pre-*Chimel* touchstone stated in *United States v. Rabinowitz,* 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), and *Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947): Was the search reasonable under the totality of the circumstances? We find that it was. When a woman is arrested on charges of obtaining prescription drugs by use of a false name and address, it is

the fact that the medicine was legitimately prescribed to her and she intended in no way to defraud or mislead anyone." Appellant's reply brief at 14.

not unreasonable for arresting officers to look through purses in search of those drugs. Here, as in *Harris,* the nature of the fruits of the crime renders it likely that "they would have been kept in some secluded spot."

Nor was the search here any more intrusive than those pre-*Chimel* searches countenanced by the Court in *Harris* and *Rabinowitz.* In *Harris,* the Court upheld a search incident to arrest that encompassed all four rooms of the defendant's apartment and which lasted five hours. The *Rabinowitz* Court sanctioned a one and one-half hour search of the defendant's one room office during which officers opened the appellant's desk, safe, and filing cabinet.

We also find instructive the Court's analysis under pre-*Chimel* law, of the searches challenged in *Williams v. United States, supra* and the companion case of *Elkanich v. United States.* In *Williams,* after arresting the petitioner in his living room, eight officers conducted an extensive search which revealed heroin in a container on a bedroom closet shelf. Elkanich challenged an hour long search of his entire four room apartment in which six agents seized items from above the moulding in a broom closet and from the living room closet. "Concededly," the Court said, "the evidence seized incident to the arrest of both petitioners was both properly seized and admitted under the Fourth Amendment as construed and applied in *Harris* in 1947 and *Rabinowitz* in 1950." *Williams v. United States, supra,* 401 U.S. at 650, 91 S.Ct. at 1151, 28 L.Ed.2d at 393.

The search of Reis's apartment was valid under pre-*Chimel* law. The district court's grant of relief from the conviction of possession of marijuana is reversed.

Affirmed in part and reversed in part.